# SUPREME COURT.

## Hollenbeck agt. Van Valkenburgh and others.

The general rule adopted by the Code of Procedure makes all persons competent witnesses, notwithstanding their interest in the event of the action.

The exceptions to this rule are, a party to the action, any person for whose immediate benefit it is prosecuted or defended, and an assignee of a thing in action, assigned for the purpose of making him a witness. These may still be disqualified by reason of interest.

This exception extends to an adverse party called as a witness, as well as to a party offered as a witness in his own behalf.

A party, incompetent to testify, may still give evidence of the loss of an instrument, as a foundation for the introduction of parol proof of its contents; and in so doing, may speak of facts and circumstances sufficient to identify the instrument, or describe it, so as to show whether the paper lost was the one in question.

On the execution of a will, where the witnesses are requested, in the presence of the testator, by some one appearing to act in his behalf, to sign their names as witnesses, it is equivalent to a request made by the testator himself; or at least it is a question to be submitted to a jury, whether in such case the facts do not show a request made by the testator himself.

A will is not void, because the person who signed the testator's name to the will, by his direction, neglected to write his own name as a witness to the will.

The only consequence of such an omission is a forfeiture of fifty dollars, to be paid by the person in default, to any person interested in the property devised, who will sue for the same.

*Albany General Term, Feb.* 1850. *Present Justices* Watson, Parker and Wright. This was a bill filed in June 1848, for the purpose of proving a lost will. The complaint alleged that Johannes Hollenbeck·died on the 18th of March 1848, seized of real and personal estate. That on the 13th December 1831, he procured Doctor Benham to draw his will and execute it in due form to pass real and personal property, in the presence of Jacob C. Van Hoesen and John C. Van Hoesen, and that the will was enclosed in a wrapper and left with Doct.Benham for safe keeping. That on the 10th April 1848, the plaintiff, being the widow of the deceased, procured the said will from the family of Doctor B. (who had died in 1834); that on the 11th April 1848, the plaintiff caused the will to be read in the presence of those interested

36

in the estate and had a copy of it made by Richard Van Val-
kenburgh; that a few days afterwards she showed the will to
Messrs. Hogeboom and Collier, counsellors at law, and was pro-
ceeding under their advice to have the will proved before the
surrogate of Greene county; that before the citations were re-
turnable; and on the 17th April, she put the will into a trunk
where her husband had kept his valuable papers and locked the
trunk; and that on the 23d of April she discovered the trunk had
been opened and the will taken away, and that she had since
been unable to find the same.  Three of the defendants, Johannes
Hollenbeck and wife, and Edward Hollenbeck, put in an answer
denying all these allegations.   The infant  defendants put in
general answers.   The bill was taken as confessed by Richard
Van Valkenburgh and wife, and Henry J. B. Tolley.

By the alleged will, the testator gave to Caspar Hollenbeck,
his son by a former marriage, five acres of woodland during his
life, which; after the death of Caspar, went to Johannes and
Catherine, children of Caspar.

· He then gave all the residue of his property, real and personal,
to the plaintiff for life, and after her death to his daughters
Catherine and Phebe Ann.   The plaintiff was to pay the debts.
Catherine married Richard Van Valkenburgh; Phebe Ann mar-
ried Henry J. B. Tolley and died in July 1848, leaving three in-
fant children.   Caspar died in 1840, leaving a widow and the
following named children, viz: Johannes Hollenbeck, Catherine,
wife of Charles Champlin, Edward Hollenbeck and Sarah Eliza-
beth Hollenbeck, an infant.

The cause was referred to Caleb Day, Esq. for hearing and
decision, and the referee reported in favor of establishing the will.
The defendants moved to set aside the report on the merits, and
the cause was ordered to be heard at a general term.

H. HOGEBOOM, *for Plaintiff*.

K. MILLER, *for Defendants*.

By the Court, PARKER, J.—This cause was commenced in
equity before the Code took effect, and was tried before the re-

Hollenbeck agt. Van Valkenburgh and others.

feree on the 22d day of February 1849. It is, therefore, to be governed by the Code of 1848, so far as that act was made applicable to existing suits (*Session Laws of* 1848, *p.* 567).

I. On the trial, the plaintiff called as witnesses two of the defendants, viz, Richard Van Valkenburgh and Henry J. B. Tolley. They were objected to by the other defendants, on the ground of their interest in favor of the plaintiff. The objection was overruled and their testimony received. It is now urged that the exception to the admission of such testimony was well taken.

This evidence was admitted by the referee, under § 344 of the Code of 1848, which provided that a party to an action might be examined as a witness, at the instance of the adverse party, or of any one of several adverse parties. Section 351 enacted that no person, offered as a witness, should be excluded by reason of his interest in the event of the action. And section 352 declared that the last section should not apply to a party to the action, nor to any person for whose immediate benefit it was prosecuted or defended, nor to any assignee of a thing in an action, assigned for the purpose of making him a witness. The meaning of this seems plainly to be that a party to the action, &c. may be disqualified on the ground of interest. As to them, the law remains as it formerly existed, and their competency depends upon their having no interest in the event of the action.

It is important to ascertain whether this exception to the general rule laid down in the statute on the subject of interest, extends to an *adverse* party called as a witness. This is a question that has been somewhat discussed among the profession, but I am not aware that it has been decided in any reported case. The question will no doubt be frequently presented, as the same language employed on this subject in the Code of 1848, was reenacted in the Code of 1849, and is still in force.

It is claimed that it was the intention of the framers of the Code, to provide only that a party should not be a witness in his own behalf. There may perhaps be some ground for such an inference, from the provisions of the other clause of the section; but there is certainly no such restriction made. When they say

this section shall not apply to a party to the action, it means *any* party to the action; as well the party offering the evidence, as the adverse party when called as a witness; and there seems to be good reason for such a construction. Without it, it would be impossible to prevent a party being a witness in his own behalf, by collusion. The former chancery practice is now adopted as to making parties. If a person having a common interest with the plaintiff, a joint contractor, for instance, refuses to join in bringing the action, he is to be made a defendant (*Code*, § 119). And if he may then be examined as a witness on the call of the plaintiff, regardless of his interest, he may give evidence in his own cause, and for his own benefit, which he could not have done, if he had occupied his proper position as a plaintiff. Collusion could not be prevented under such a construction of the statute. I think the disqualification on the ground of interest applies therefore as well to the adverse party, as to the party offering his testimony in his own behalf.

It is necessary to examine, in the next place, whether these defendants, or either of them, had any interest in favor of the plaintiff. Every person is competent to be sworn as a witness, unless his disqualification is affirmatively shown; and the burthen of proof rests on the party making the objection. Whether the witnesses objected to in this case were interested, depended on the fact whether they would take more of the property of the decedent under the will, than would fall to them as heirs at law. No evidence was offered on this point, nor were the witnesses themselves examined on their *voir dire*. The defendants objected that the interest of the witnesses was identical with that of the plaintiff, and evidently depended upon the language of the alleged will to support the objection. But I think an examination of the provisions of the will by no means satisfactory on this question of interest. There seems to have been but little personal property; it is stated in the bill to have been about $300; whether more or less than enough to. pay the debts, does not appear, nor was it perhaps material to inquire. The property was principally real estate. Five acres only were given to Caspar and his chil-

Hollenbeck agt. Van Valkenburgh and others.

dren. The probability is that this was worth much less than the one-third, subject to the widow's dower, which he would have received as heir at law. But this inferred principally from the fact of the opposition made to proof of the will, and from the small number of acres devised to Caspar. There is no proof whatever either of the value of the five acres devised, or of the share Caspar would have taken as heir at law. But conceding that the five acres were worth less than Caspar's share, as heir, there are still greater difficulties in showing these witnesses interested. The widow would have been entitled at law only to her dower, that is to say, to the use of one-third of the real estate during her life. The will gave her a life estate in the whole property. She was therefore largely interested in establishing the will. The remainder was devised to the wives of these two witnesses, to be equally divided between them. At law these witnesses, in right of their wives, would have entered with Caspar into immediate possession of the property, subject only to the widow's dower. Now, whether the immediate possession of one-third, subject to dower, is worth more or less than one-half, after the death of the widow, is a question undetermined by the evidence. Nor can it be ascertained by computation except on proof of the widow's age and the value of the property. I think, therefore, there was no evidence before the referee that would have warranted him in deciding the witnesses to be interested in favor of establishing the will.

II. It is also objected that the referee erred in admitting the plaintiff to be examined and to testify to any facts except the bare loss of the instrument. The testimony of the plaintiff was only admissible to prove the loss of the will (Woodworth vs. Barber, 1 *Hill*, 172; 2 *R. S.* 406; 2 *Cow. & Hill's Notes*, 1218; 1 *id.* 138; Jackson vs. Betts, 6 *Cow.* 290; Blade vs. Noland, 12 *Wend.* 173). It was necessary she should identify the instrument, or describe it, so as to show whether the paper lost was the one in question; beyond this, she had no right to go. There are some facts mentioned in her statement unnecessary for the purpose of identity, and inadmissible as evidence. But it must be remembered her testimony was addressed to the referee for

his consideration, only for the purpose of introducing secondary evidence of the contents of the will; and the referee reports that he decided the evidence improper and that he would not consider it or take it into account, except so far as it went to show the loss of the instrument. I see no good ground of exception to the course taken by the referee on this point; and I think the evidence of the loss of the will entirely satisfactory.

III. The evidence of the execution of the will was sufficient. It was shewn that the testator duly acknowledged it as his last will and testament in the presence of the witnesses, and that the witnesses signed their names at the request of Doctor Benham, who appeared to be acting in behalf of the testator, such request being made in the presence of the testator. This was equivalent to a request made by the testator himself, as was decided by this court in Doe vs. Roe (2 *Barb. S. C. Rep.*, 200); and in Rutherford vs. Rutherford (1 *Denio*, 33) it was held sufficient evidence to be submitted to a jury upon the question whether there was a request or not.

The defendants' counsel cited and relied upon Hudson vs. Parker (8 *Lond. Jurist*, 786). There, two persons present at the same time, subscribed a paper at the request and in the presence of a party, who told them it was his will. They did not see him sign it, nor did he acknowledge any signature, the writing on the paper being concealed from them. It was held that the statute had not been complied with. The same point was decided in Scott vs. George (3 *Curteis Ex. R.* 160). These decisions were made under the English statute concerning wills (1 *Vic. Ch.* 26, § 9), which requires that a will, "shall be signed at the foot or end thereof by the testator, or by some other person in his presence and by his direction; and such signature shall be made or acknowledged by the testator in the presence of two or more witnesses present at the same time, and such witnesses shall attest or subscribe the will in the presence of the testator." It will be seen that this statute is in most of its features like our own, which requires in addition, that the testator shall declare the instrument to be his last will and testament, and that the witnesses shall

sign at the request of the testator.    But I think the English cases cited unlike the one now under consideration.    There, the testator did not acknowledge the execution of the will, and the writing on the paper was concealed from the witnesses.    Here, the will was exhibited; there was no concealment, and the testator not only acknowledged its execution but in accordance with the additional requirement of our statute declared it to be his last will and testament.

The testator did not subscribe his name to the will.  The name accompanying his mark was probably written by the same person who drew the will, and the statute requires that every person who shall sign the testator's name to any will by his direction, shall write his own name as a witness to the will (2 R. S., 3d ed., 124, § 33).  A compliance with this requirement was omitted. But the same section provides, that such omission shall not affect the validity of the will.   The only consequence of the omission was a forfeiture of fifty dollars, to be paid by the person in default, to any person interested in the property devised, who would sue for the same.

IV.  I think the referee was clearly right in coming to the conclusion that the will whose execution was proved by John C. Van Hoesen, was the same will shown to Messrs. Hogeboom and Collier, and of which a copy was taken by Richard Van Valkenburgh.   This question of identity rested entirely upon circumstances, but they all pointed in one direction.   They agree in date—in the names of the testator and witnesses.   The will witnessed by John C. Van Hoesen was executed in the presence of Doctor Benham, and in all probability drawn by him.   The will produced to Mr. Van Valkenburgh and copied by him, seventeen years afterwards, was found among the papers of Doct. Benham— purported and appeared to be an original paper, was enclosed in a wrapper, with seals unbroken, and was endorsed "The last will and testament of Johannes Hallenbeck," in the handwriting of Doctor Benham.   It bore the appearance and had the marks of antiquity of a will executed in 1831.   No other instrument is produced and no other is pretended to have been seen or heard

of. John C. Van Hoesen, whose name appears as a witness to the will sought to be proved, witnessed but one will.

Under these circumstances, considering the lapse of time and the death of most of those persons who could have had any knowledge of the transaction, I think the evidence left no reasonable doubt of the identity of the instrument; and that point being settled, it followed there was the most satisfactory evidence of the contents of the will, in the sworn copy made by Mr. Van Valkenburgh and in the recollections of the other witnesses.

There must therefore, be a decree in accordance with the report of the referee, which is hereby affirmed. The costs of all parties previous to the appeal must be paid out of the estate. The costs on the appeal are also to be paid out of the estate, except that Johannes Hollenbeck and wife, and Edward Hollenbeck must pay their own costs on the appeal.